IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Loretta Workman, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>James Cooper, D15, and )<br>Israel Bailey, A45, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 6:08-cv-3429-HFF-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 62). In her amended complaint, the plaintiff, who is proceeding *pro se*, alleges harassment and violation of her constitutional rights. She seeks $50,000 in damages from each of the defendants "for having to go through the embarrassment, the harassment, and the mental anguish that I was put through by the disrespect and misconducted performed by [the defendants]" (amended comp. 1).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On December 28, 2009, the defendants filed a motion for summary judgment. On December 29, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if she failed to respond adequately. On March 3, 2010, the plaintiff filed her opposition to the defendants' motion for summary judgment.

## FACTS PRESENTED

According to the statement[1] of the plaintiff's husband, Olandio Workman, he and the plaintiff first saw defendant Officer Israel Bailey of the Greenville County Sheriff's Office at around 8:00 p.m. on November 12, 2006, at the Travelers Inn Motel. They were waiting on the sidewalk near the entrance to the motel for Mr. Workman's mother to drop off some money. Officer Bailey pulled up and asked them about a girl for whom he was looking. Mr. Workman and the plaintiff told him they did not know the girl. Officer Bailey then asked them why they were standing there. Mr. Workman and the plaintiff told him they were waiting for Mr. Workman's mother to arrive. Officer Bailey asked for their names. At that point, Mr. Workman's mother arrived, but Officer Bailey continued asking them what they were doing (Olandio Workman stmt. at 1).

On that same date, Officer Bailey investigated the driver of a white vehicle located at the Travelers Inn Motel. Officer Bailey interviewed the driver, who stated that he had "dropped off New York," the nickname for John Kasani Johnson. Officer Bailey was familiar with Johnson and knew what he looked like. Deputy Bailey believed that there were one or more active warrants for Johnson for armed robbery (Bailey aff. and supp. rep.). However, according to defense counsel, a recent search in 2009 could not confirm active warrants for armed robbery against Johnson on November 12, 2006 (*see* def. m.s.j. 2).

According to Officer Bailey, he saw Johnson coming down the staircase near Room 114. When Johnson saw Officer Bailey, he ran back up the stairs and to the left (Bailey supp. rep.). Officer Bailey reported on his police radio that he was at the Travelers Inn Motel and had just had a black male suspect run from him (Cooper supp. rep.). Officer Bailey then left his patrol car and pursued Johnson. When he reached the top of the stairs, he did not see Johnson (Bailey supp. rep.). When Officer Cooper arrived, Officer Bailey advised him that he a black male suspect by the name of "New York" had run from him. Officer Cooper advised Officer Bailey that he was familiar with "New York" and that his real name was John Johnson. Officer Bailey told Officer

---

[1]Mr. Workman's statement, which was submitted by the plaintiff in support of her opposition to the motion for summary judgment, is not sworn, notarized, or declared under penalty of perjury and therefore does not meet the requirements of an affidavit. *See* 28 U.S.C. § 1746.

2

Cooper that Johnson ran around the building toward the pool and that he never came back around. Officer Bailey wanted to check the motel rooms because he felt that Johnson had run into one of the rooms and was hiding (Cooper supp. rep.). Officer Cooper assisted Officer Bailey in checking all of the second-floor motel rooms on the side of the building facing the motel's swimming pool (Bailey supp. rep.; Cooper supp. rep.). The officers knocked on doors, and Officer Bailey advised the occupants that he had someone run from him who had a warrant for his arrest and all he wanted to do was check the bathroom (Cooper supp. rep.). Officers Cooper and Bailey checked approximately seven rooms (Bailey supp. rep.). The plaintiff and her husband were staying in the last room on the second floor (Bailey supp. rep.; Cooper supp. rep.).

According to the affidavits of the defendant officers, when they reached the last room on the second floor near the pool, Officer Bailey knocked on the door. Officer Cooper was standing to the left of the door in front of the window, and Officer Bailey was standing to Cooper's right in front of the door (Cooper supp. rep.). Someone yelled, "Who is it?," and Officer Bailey replied "Greenville County Sheriffs Department" (Bailey supp. rep.). A black man came to the window, partially opened the curtain so that only his head was visible, and asked, "What do you want?" (Bailey supp. rep.; Cooper supp. rep.). Officer Cooper could not see anything other than the man's head because there were no lights on in the room (Cooper supp. rep.). In response to the question "What do you want?", Officer Bailey replied that a heavyset subject, weighing approximately 350 pounds, with active warrants had run from him and gone into one of the motel rooms, and he asked the man to open the door so he could talk to him (Bailey supp. rep.). Officer Cooper stated that Officer Bailey advised the male occupant of the room that there was a warrant of arrest for a man who had run from him, that he suspected the to be in one of these rooms, and that all he needed to do was to check the bathroom. Officer Cooper further stated that the motel room occupant advised Officer Bailey that there was no one in his room, and that Officer Bailey again advised the occupant that all he needed to do was check the bathroom (Cooper supp. rep.).

Officer Cooper then advised the occupant that he was making Cooper feel as if the occupant was hiding someone and that if the occupant was hiding the person the officers were looking for, Cooper was going to charge him. Officer Cooper also stated that Officer Bailey told

3

the motel room occupant to open the door or Bailey was going to kick it in, but he did not make any attempt or motions to do so (Cooper supp. rep.). The man then opened the door, and Officer Bailey recognized him as being Olandio Workman (Bailey supp. rep.; Cooper supp. rep.). Officer Bailey then said that all he needed to do was check the motel room's bathroom since the man the officers were pursuing was too big to hide under the bed (Bailey supp. rep.; Cooper supp. rep.). According to Officer Bailey, Officer Cooper was standing to the left side of the door to the motel room and could not see into the room (Bailey supp. rep.). Mr. Workman's demeanor – acting hesitant and as if he were going to shut the door – led Officer Bailey to believe that Johnson was in the room (Bailey supp. rep.).

Mr. Workman stated to the officers that he and his wife, the plaintiff in this action, did not have on any clothes (Bailey supp. rep.; Cooper supp. rep.). Officer Bailey did see a white female lying on the bed, fully covered with a blanket (Bailey supp. rep.). Officer Bailey told Mr. Workman that he and his wife could put on some clothes. Mr. Workman then closed the door leaving approximately a one-inch gap, into which Officer Bailey placed his boot so that the door could not be closed all the way. Once Mr. Workman and his wife were dressed, Mr. Workman then allowed Officer Bailey to enter the room and check the bathroom. Officer Cooper stayed outside the room in the doorway. Officer Bailey did not find Johnson in the bathroom. Officers Bailey and Cooper then left and went to the opposite side of the motel, where they started checking a couple of known drug activity rooms (Bailey supp. rep.; Cooper supp. rep.). In particular, the officers checked Room 239, where they detained and placed handcuffs on a female subject who had given the officers several different names. After the handcuffed female was taken to Officer Bailey's patrol car, Mr. Workman and the plaintiff approached Officer Bailey's patrol car. Mr. Workman said that he wanted Bailey's badge number and name, alleging that Bailey and Cooper had sexually harassed him. Officer Bailey provided Mr. Workman with all of the information he requested and offered to get a supervisor to come hear any complaint. Mr. Workman stated that he did not want to see a supervisor (Bailey supp. rep.).

In his statement, Mr. Workman contends that the officers knocked on the motel room door and told him to open the door or they would break it down. When Mr. Workman asked

if they had a warrant, he was told they did not have a warrant but that if he did not open the door they would kick it in. Mr. Workman opened the door a little bit, and then the officers told him they were looking for someone. After putting on his pants, Mr. Workman opened the door a little bit more, and the officers told him they needed to search the room. Mr. Workman told the officers that his wife did not have on any clothes. He claims Officer Bailey "put his flashlight about 2 inches from [his] face and said if he's in here you're going to jail and threatened to hit [him] with his flashlight." Officer Bailey then pushed the motel room door open. Mr. Workman alleges that he again told the officers that his wife did not have on any clothes, and the officers told him that his wife could put on her clothes. Mr. Workman claims that Officer Bailey put his foot in the door to prevent him from completely closing the door while his wife changed clothes. He further contends that Officer Cooper watched his wife from the door while she changed clothes. After his wife finished dressing, Mr. Workman claims that Officer Bailey pushed open the door and walked in the room and searched the bathroom (Workman stmt. at 1).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised,

5

the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

***Fourth Amendment***

This court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Liberally construed, the plaintiff's complaint states a claim for violation of the Fourth Amendment of the United States Constitution. As noted above, the plaintiff's husband's statement submitted in opposition to the motion for summary judgment is not sworn, notarized, or declared under penalty of perjury and, therefore, does not meet the requirements of an affidavit. Nonetheless, the defendants have not met their initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Accordingly, summary judgment on this claim is inappropriate.

6

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Under the facts as testified to by the defendants, Officer Bailey told Mr. Workman that he would kick the motel room door in if he did not open the door, after which Mr. Workman opened the door (Cooper supp. rep.). Thus, for Fourth Amendment purposes, a search occurred:

> It is well established that a search occurs for Fourth Amendment purposes "when officers gain visual or physical access to a ... room after an occupant opens the door not voluntarily, but in response to a demand under color of authority." *United States v. Conner*, 127 F.3d 663, 666 (8th Cir.1997). Under such circumstances, the fact that "the officers gained visual access to the interior of a dwelling without physically entering it is irrelevant to the question [of] whether a search was effected." *United States v. Winsor*, 846 F.2d 1569, 1572 (9th Cir.1988) (en banc).

*U.S. v. Mowatt*, 513 F.3d 395, 400 (4th Cir. 2008).

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). "This Fourth Amendment protection extends to guests staying in hotel rooms." *U.S. v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (citing *Stoner v. State of Cal.*, 376 U.S. 483, 490 (1964) ("No less than a tenant of a house ... a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.")). However, this presumption can be overcome. "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). In *Brigham*, the United States Supreme Court gave examples of such exceptions:

> We have held, for example, that law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, *Michigan v. Tyler*, 436 U.S. 499, 509 (1978), to prevent the imminent destruction of evidence, *Ker v. California*, 374 U.S. 23, 40 (1963) (plurality opinion), or to engage in " 'hot pursuit' " of a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42, 43 (1976). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the

7

> warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394 (1978).

*Id.* at 403 (parallel citations omitted). "The government bears the burden of demonstrating exigent circumstances that overcome their presumptively unreasonable entry." *Mowatt*, 513 F.3d at 399.

Thus, the question is whether the defendants' warrantless search was objectively reasonable under the Fourth Amendment. Here, the defendants argue they were in "hot pursuit" of a suspect, Johnson, and the facts of the situation "would give rise to an objectively reasonable belief that John Johnson, a very large adult, with what Officer Bailey believed was an active felony warrant for robbery, was hiding out in Mr. Workman's motel room and that there was a need for immediate entry to prevent Johnson from escaping and causing harm to the public" (def. m.s.j. 11-12). However, it appears to this court that an issue of material fact exists on that question.

In *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967), the United States Supreme Court recognized the right of police, who had probable cause to believe that an armed robber had entered a house minutes before, to make a warrantless entry to arrest the robber and search for weapons. In that case, an eyewitness saw the fleeing armed robber enter a house. The Court held that the "exigencies of the situation" were such that the police acted reasonably in entering the house without a warrant. *Id.* at 298-99. The Court stated, "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape." *Id.*

In *Wallace v. King*, 626 F.2d 1157 (4th Cir. 1980), police officers searched two homes without search warrants while seeking a person wanted on a valid arrest warrant. The court noted that the circuit courts had not been uniform in their "approach to the problem presented by the instant case." *Id.* at 1161. The court went on to state:

8

> Common to all those opinions, however, is the requirement that, for the search to be constitutionally valid, not only must the officers have probable cause to believe the person named in the arrest warrant is on the premises of the third person, but there must also exist an appropriate exception to the warrant requirement, e. g., consent of the owner or occupier of a dwelling unit or exigent circumstances, which did not exist in this case. It is not practical, in this opinion, to list all the circumstances which may justify such entry. Exigent circumstances may properly include hot pursuit or justifiable fear of injury to persons or property if the arrest is delayed. Whether the entry sought to be made is in an area where a magistrate is or is not readily available, and whether another officer is available to keep watch on the premises while an officer seeks a search warrant, are among the factors which may be considered in appropriate cases. The nature of the premises sought to be entered and whether the officers have reasonable cause to believe that the subject of the arrest warrant owns or resides therein are other factors. Reasonable or probable cause to believe that a person for whom an arrest warrant has been issued is on the premises, standing alone, is not sufficient.

*Id.* at 1161.

In *U.S. v. Jones*, 204 F.3d 541, 542 (4th Cir. 2000), the court held that exigent circumstances were present when police officers entered a house after they saw a suspected drug deal, ordered the defendant to stop, and the defendant ran into the house. The court found:

> [The defendant] correctly points out that, even assuming the existence of probable cause, exigent circumstances are required to justify an officer's warrantless entry into a residence. We have no difficulty concluding that such circumstances existed here. First, the officers reasonably believed that evidence could be destroyed if they waited to obtain a warrant before entering [the defendant's] home. . . . Second, they were in "hot pursuit" of Jones when he entered the house. . . . Third, they had no idea whether the house belonged to [the defendant], and thus were reasonably concerned for the safety of innocent inhabitants of the house.

*Id.* at 543. Similarly, in *U.S. v. Oaxaca*, 569 F.2d 518, 521 (9th Cir. 1978), the court held that "[t]he exigencies of hot pursuit justified the warrantless entry into the garage" where police knew a bank had been robbed just a few minutes before, the robbers left in a car registered to the address of the house at issue, they saw one of the suspects run into house, and moments later they heard a loud noise that they thought came from the garage.

However, in *U.S. v. Diaz-Segovia*, 457 F.Supp. 260, 271-72 (D. Md. 1978), the court considered whether a search of a house, after the arrest of two suspects and after other suspects had fled, came within the "hot pursuit" exception to the search warrant requirement. The court noted that "[t]he question seems to boil down to whether (1) the police have a reasonable belief that a suspect is present in the house; and (2) whether the police reasonably fear that the suspect is armed and dangerous." *Id.* The court noted that there was no evidence the police saw the suspects run into the house, and the police waited approximately 30-40 minutes after the initial arrests before entering the house, which "militate[d] against a finding that the entry of the house was in fact an emergency." *Id.* at 272. Further, there was no evidence that the agents had an suspicions that the suspects were either armed or dangerous. *Id.*

In view of the foregoing cases, it appears to this court that issues of material fact remain on the issues of (1) whether the defendants had probable cause to believe that Johnson was in the plaintiff's motel room and (2) whether exigent circumstances justified the defendants' warrantless search of the motel room. The evidence before the court is that Officer Bailey believed that Johnson had one or more active warrants for armed robbery, and he saw Johnson run up the stairs to the second floor of the motel. However, the defendants had no information linking Johnson with the plaintiff's motel room. Furthermore, even assuming the officers had probable cause to search the motel room, the evidence does not support a finding of exigent circumstances. There is no indication that Officer Bailey believed Johnson was armed. Further, upon Officer Cooper's arrival, another officer was available to keep watch on the premises while Officer Bailey sought a search warrant, if he had chosen to do so. Accordingly, summary judgment is not warranted.

### *Qualified Immunity*

The defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits

10

as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

As discussed above, the plaintiff has alleged the deprivation of an actual constitutional right – the right under the Fourth Amendment to be secure from unreasonable searches. As stated above, "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton,* 445 U.S. at 586 (internal quotation marks omitted). Furthermore, even assuming probable cause existed to believe Johnson was in the plaintiff's motel room, it was clear under the law at the time of this incident that exigent circumstances were necessary to enter the room without a warrant. Given the facts known to the officers at the time, it was not objectively reasonable for them to enter the plaintiff's motel room to search for Johnson without a search warrant. Accordingly, summary judgment on the basis of qualified immunity is not appropriate.

11

*Substantive Due Process*

To the extent the plaintiff alleges a claim that she was sexually harassed by the defendants in violation of the substantive due process component of the Fourteenth Amendment, the claim fails. In *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980), the Fourth Circuit Court of Appeals defined the "constitutionally protected substantive due process right" as "the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning and harmful as literally to shock the conscious of the court. The existence of this right to ultimate bodily security, the most fundamental aspect of personal privacy, is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process." 621 F.2d at 612-613. As the court stated in *Hall v. Tawney*, "not every state law tort becomes a federally recognized 'constitutional tort' under § 1983 simply because it is committed by a state official." *Id.* at 613.

In this case, the plaintiff alleges that when the officers allowed her husband to partially close the door while she was getting dressed, she saw Officer Cooper "staring at [her]." She said "Baby, he's looking at me," at which time Officer Cooper immediately looked away (comp. at 5). Mr. Workman's unsworn statement is the same (Workman stmt. at 1). The plaintiff's allegation of sexual harassment, based on the officer's purported conduct of looking at her for a brief moment through a partially closed door while she was getting dressed, does not rise to the level of a violation of substantive due process in violation of the Fourteenth Amendment. Consequently, to the extent that plaintiff is seeking to recover for a substantive due process violation, the claim should be dismissed.

*South Carolina Tort Claims Act*

To the extent the plaintiff has attempted to allege a state tort claim, the claim should be dismissed. The South Carolina Tort Claims Act ("SCTCA") constitutes the exclusive remedy for torts committed by a government employee acting within the scope of his official duties. S.C.

12

Code Ann. § 15-78-70(a). In such a case, the agency or political subdivision for which the employee was acting is the proper party defendant.[2] *Id.* § 15-78-70(c). Further, the SCTCA provides that "[a]n employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefore except as expressly provided for in subsection (b)." *Id.* Subsection (b) provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." *Id.* § 15-78-70(b).

Here, to the extent the plaintiff has attempted to allege state tort causes of action against the defendants, she has neither alleged nor presented any evidence demonstrating that either Officer Bailey or Officer Cooper were not acting within the scope of their official duties in effecting the warrantless entry into the motel room, nor has she alleged or proved that the conduct of either of the officers amounted to actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. Consequently, both Bailey and Cooper have immunity from liability under the Tort Claims Act from any state tort claims asserted by the plaintiff.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 62) be granted in part and denied in part.

July 16, 2010  
Greenville, South Carolina

s/Kevin F. McDonald  
United States Magistrate Judge

---

[2] The plaintiff named the Greenville County Sheriff's Office as a defendant in her complaint. However, on March 16, 2009, the Honorable Henry F. Floyd, United States District Judge, dismissed the Sheriff's Office on Eleventh Amendment grounds. *See* S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina.").